TEXAS & PACIFIC COAL CO. v. CHOATE.

(Court of Civil Appeals of Texas. Ft. Worth. June 28, 1913. Rehearing Denied Oct. 18, 1913.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT — NEGLIGENCE — EVIDENCE — SUFFICIENCY.

In an action for injuries to an employé by the fall of the cage in which he was lowered to his work in a mine, evidence *held* to support a finding that the appliance of the engine controlling the movement of the cage was defective, and that the employer was negligent in permitting it to so remain.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

2. DAMAGES (§ 216*) — PERSONAL INJURIES — INSTRUCTIONS.

A charge on the measure of damages for a personal injury, which directs the jury to assess the damages at such a sum as will reasonably compensate plaintiff for physical pain and diminished earning capacity from the time of the filing of the suit and as long as the diminution shall exist, directs the jury to award such a sum as paid presently will compensate plaintiff for the injuries sustained, and is correct.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. § 216.*]

Appeal from District Court, Eastland County; Thomas L. Blanton, Judge.

Action by J. D. Choate against the Texas & Pacific Coal Company. From a judgment for plaintiff, defendant appeals. Affirmed.

John W. Wray, of Ft. Worth, for appellant. J. R. Stubblefield, of Eastland, for appellee.

SPEER, J. J. D. Choate, an employé in the service of the Texas & Pacific Coal Company, received an injury through the alleged negligence of that company in permitting a cage in which he was being lowered to his work to fall to the bottom of the shaft. The precise ground of negligence alleged, and upon which the recovery in this case was had, was that of a defective throttle; the throttle being that portion of the engine by which the movement of the cage was controlled. In this action by the injured employé a verdict and judgment was entered in his favor, and the defendant has appealed.

The principal contention of appellant is that the trial court should have instructed a verdict in its favor for the insufficiency of the evidence to support a finding of negligence in the respect indicated. But we overrule this assignment.

Oliver Thomas, an employé of appellant at the time of the injury and at the time of the trial, testified: "At the time of the injury

Choate got on the cage that day with some material, to go down, and gave me the signal to go down. I started him down, and he got down a third of the way, and I tried to shut the steam off, and I failed, and then I tried to put a little more force, and failed again, and then I hit the throttle with both hands, and she stuck fast, and I tried to reverse and I couldn't reverse it, and then I hit the throttle again, and it closed that time. I didn't shut the steam off because I couldn't, because the throttle stuck; that is, the throttle would not work. The first effort that I made to shut off the steam was just an ordinary push, the same as we always give on a throttle. The second effort was a little heavier push, and the third effort, I struck it with both hands. If I weighed 130 pounds, I put 130 pounds against the lever, the third time—I threw my weight against it. When the throttle refused to work I tried the reverse. If I could have reversed the engine it would have stopped, or at least stopped a fraction of a second, and started back the other way. I did not reverse it because I couldn't."

J. W. Stewart testified: "I know something about the condition of the throttle, on the hoisting engine, at shaft No. 2 of the defendant, at or about the time the plaintiff* is said to have been injured. I was working at shaft No. 2, and the engine was new, and I observed that the throttle seemed to be stiff. A short time before Choate was injured the engineer, Joe Yarborough, called me into the engine room, and operated the throttle for me to see how it was working. It seemed to work stiff, and Yarborough seemed to be using much force to operate the throttle. It seemed to require much more strength than usually required to operate it. I did not carefully inspect the throttle, but from the manner of its operation it was my opinion that the trouble was with the throttle, that it was too stiff. After the engine was installed by the company's master mechanic, and by him turned over to the operating employés to run, said engine and throttle were not in good running order when I observed its operation."

George Brown, a witness for appellant, testified: "I operated the new engine and in getting the throttle open; it was stiff to get open. You had to use both arms to get it open, but after you got it open it seemed all right. That was not confined to opening up in the morning, or starting fresh in the morning or evening. That was all of the time; every hoisting that was done was like that. That was not the same throttle that came with that engine. That was a pretty hard winter, and the throttle at No. 11 got bursted, and they came over and got that throttle, which came with the engine and took it to No. 11 and put it on No. 11 engine, and sent for a new one for that engine in the place of it."

[1] The evidence showed that the shaft

where the injury occurred had been used about two months, and that whatever defect existed in the machinery had existed for a considerable time prior to the accident. It is true that appellant's witnesses denominated the defect as a mere stiffness in the throttle due to the newness of the machinery. But the court expressly directed the jury, if .they found this to be true, that 'appellee had assumed the risk, and to return a verdict for the appellant. But the jury were not bound to accept the opinion of these witnesses, but were authorized to find, as they did, that the throttle was defective, and that appellant was negligent in permitting it to remain so. The circumstances attending the injury show that the defect was more serious than appellant's contention would admit.

[2] It is insisted that the court erred in his charge on the measure of damage. It is as follows: "In case you should find a verdict for the plaintiff, you would assess his damages at such a sum as in your judgment would reasonably compensate the plaintiff for physical pain, if any, suffered by him and the diminution, if any, of his earning capacity from the time of the filing of this suit, and as long as such diminution, if any, shall exist, that were the direct and proximate result of the negligence, if any, of the said defendant." The point is made that the recovery should be of such a sum as paid now would compensate appellee for his injury. This is the rule. But it is quite clear to us that the charge does not announce otherwise. In F. W. & D. C. Ry. Co. v. Morrison, 93 Tex. 527, 56 S. W. 745, cited by appellant, the instruction was so worded as to permit the jury to award to the plaintiffs the total amount which they would have received from the deceased had he not been killed. This was manifestly error. But the obvious meaning of the charge under review, and the jury doubtless so understood it, was that the damages returned in the verdict should be for such a sum as paid now would reasonably compensate the plaintiff for the injuries sustained.

The evidence supports the verdict on the issues submitted. There is no error in the record, and the judgment is affirmed.